DAVIS, Judge.
T.S. ("Respondent"), the mother of the juveniles J.D.S. ("John") and J.K.S. ("Joseph") (collectively the "children")[1] appeals from the trial court's order terminating her parental rights. After a thorough review of the record and applicable law, we affirm the trial court's order.
Factual and Procedural Background
Respondent has a history with child protective services dating back to 2011. The Catawba County Department of Social Services ("DSS") became involved with Respondent after she left her five children, including John and Joseph, alone in her vehicle outside the Iredell County courthouse on 19 September 2014.[2] Respondent was arrested and charged with five counts of misdemeanor child abuse in connection with the incident.
The children were initially placed into the care of maternal relatives. However, on 28 January 2015 DSS was informed of concerns with the placement, including inappropriate discipline and drug use in the home. The following morning, DSS obtained non-secure custody of the children and filed a petition alleging them to be neglected and dependent juveniles. The children were subsequently placed in a foster home.
An adjudication hearing was held in Catawba County District Court beginning on 16 March 2015. In an order entered 14 April 2015, the trial court adjudicated the children neglected and dependent and transferred the case to Mecklenburg County on the motion of DSS. The court ordered that the children be placed into the custody of Mecklenburg County Youth and Family Services ("YFS").
Following a hearing in Mecklenburg County District Court on 14 May 2015, the trial court entered a disposition order on 12 June 2015. In its order, the court set the plan for the children as reunification with Respondent with a concurrent plan of adoption and directed Respondent to comply with her case plan. The case plan required Respondent to (1) obtain a Families In Recovery to Stay Together ("FIRST") assessment and follow all recommendations; (2) obtain a substance abuse assessment and comply with treatment; (3) obtain and maintain appropriate housing and income; and (4) demonstrate appropriate parenting skills and stability.
In a review order entered 7 December 2015, the trial court found that Respondent continued to struggle with substance abuse and tested positive for cocaine on 27 July 2015. The court also determined that she was not complying with her case plan in that she had not completed a FIRST assessment and had not obtained employment or permanent housing.
The trial court subsequently held a series of permanency planning hearings. On 25 January 2016, the trial court entered a permanency planning order in which it found that although Respondent had obtained employment and completed a FIRST assessment, she had nevertheless failed to make adequate progress with her case plan. Consequently, the court changed the permanent plan to adoption.
In another permanency planning order entered 23 May 2016, the trial court found that Respondent continued to make progress in addressing her substance abuse issues, had obtained housing through the Cascade drug treatment program, and was in compliance with drug treatment court. However, in November 2016 Respondent relapsed and tested positive for cocaine and alcohol on multiple occasions. As a result, she was terminated from the Cascade program.
On 22 March 2017, the trial court entered a final permanency planning order in which it found that Respondent's substance abuse "continue[d] to cause [her] to have insufficient housing and/or be [un]able to provide for the basic needs of the children[,]" and that she was not making sufficient progress in addressing the issues that led to the children's removal from her care. The court directed YFS to file a petition to terminate Respondent's parental rights.
On 19 April 2017, YFS filed a petition to terminate Respondent's parental rights to the children on the grounds of neglect, failure to make reasonable progress, failure to pay reasonable cost of care, and dependency. See N.C. Gen. Stat. § 7B-1111(a)(1)-(3), (6) (2017). Following a hearing on 4 October 2017, the trial court entered an order on 3 November 2017 concluding that all four grounds alleged in the petition existed to terminate the parental rights of Respondent. Respondent filed a timely notice of appeal.
Analysis
Respondent's counsel has filed a "no-merit" brief on her behalf in which he states that after "a conscientious and thorough review of the record on appeal" he "was unable to identify any issue of merit on which to base an argument for relief." Pursuant to Rule 3.1(d) of the North Carolina Rules of Appellate Procedure, he requests that this Court conduct an independent examination of the case. N.C. R. App. P. 3.1(d).
In accordance with Appellate Rule 3.1(d), counsel wrote Respondent a letter on 9 March 2018 advising her of (1) counsel's inability to find error; (2) counsel's request for this Court to conduct an independent review of the record; and (3) Respondent's right to file her own arguments directly with this Court while the appeal is pending. Counsel attached to the letter a copy of the record, transcript, and no-merit brief. Respondent has not submitted written arguments of her own and a reasonable period of time for her to have done so has passed.
After carefully reviewing the transcript and record, we are unable to find any prejudicial error in the trial court's 3 November 2017 order terminating respondent's parental rights. The termination order contains sufficient findings of fact supported by clear, cogent, and convincing evidence to support the conclusion that Respondent neglected the children in the past and that there is a likelihood of repetition of neglect if the children were returned to Respondent's care. See N.C. Gen. Stat. § 7B-1111(a)(1) ; see also In re Ballard , 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984) (At a termination hearing, the trial court may consider a prior adjudication of neglect but "must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect").
The trial court's factual findings demonstrate that Respondent failed to make sufficient progress on her case plan to alleviate the conditions that led to the removal of the children from her care. At the time of the 4 October 2017 termination hearing, Respondent had not addressed her substance abuse issues and had been discharged from the Cascade treatment program after testing positive for cocaine and alcohol. In addition, she had failed to obtain permanent housing or stable employment. See In re C.M.P. , --- N.C. App. ----, ----, 803 S.E.2d 853, 859 (2017) ("A parent's failure to make progress in completing a case plan is indicative of a likelihood of future neglect."). The finding of this statutory ground alone supports termination of Respondent's parental rights. See In re Humphrey , 156 N.C. App. 533, 540, 577 S.E.2d 421, 426 (2003) ("A finding of any one of the enumerated grounds for termination of parental rights under N.C.G.S. 7B-1111 is sufficient to support a termination." (citation omitted)).
Finally, the trial court also made appropriate findings in determining that the termination of Respondent's parental rights was in the children's best interests. See N.C. Gen. Stat. § 7B-1110(a) (2017). Accordingly, we affirm the court's order terminating Respondent's parental rights.
Conclusion
For the reasons stated above, we affirm the trial court's 3 November 2017 order.
AFFIRMED.
Report per Rule 30(e).
Judges ELMORE and ZACHARY concur.

Pseudonyms are used to protect the juveniles' privacy and for ease of reading.

The termination order at issue does not involve Respondent's three older children. Furthermore, the father of John and Joseph is not a party to this appeal.