669 S.E.2d 55 (2008)
In the Matter of S.N., X.Z.
No. COA08-624.
Court of Appeals of North Carolina.
December 2, 2008.
*56 James A. Dickens, Greensboro, for petitioner-appellee Guilford County Department of Social Services.
Susan J. Hall, Fayetteville, for respondent-appellant mother.
Smith, James, Rowlett & Cohen, L.L.P., by Margaret Rowlett, Greensboro, for guardian ad litem.
*57 STEELMAN, Judge.
Where the minor children were named in the caption of the summons in a proceeding to terminate parental rights, and the children's guardian ad litem was named as a respondent and accepted service of the summons, the trial court had subject matter jurisdiction. The trial court's uncontested findings of fact supported its conclusion that grounds existed for termination of respondent's parental rights based upon the minor children being willfully left in foster care for twelve months (N.C.Gen.Stat. § 7B-1111(a)(2)).

I. Factual and Procedural Background
Respondent is the mother of S.N. and X.Z. Respondent was incarcerated from December 2004 to February 2006. While she was incarcerated, she allowed her mother, P. Barnes (Barnes), to take custody of S.N. Respondent gave birth to X.Z. while in prison and allowed Barnes to take custody of X.Z. Respondent was released from prison in February 2006 and did not assume custody of the children.
X.Z. was born with spina bifida and has special needs. He is able to walk with the aid of leg braces, he has to be catheterized four times per day, and he has a shunt in his brain that drains fluid.
On 16 June 2006, the Guilford County Department of Social Services ("DSS") became involved in the case. A petition was filed that alleged the following: (1) respondent was addicted to crack cocaine; (2) Barnes was an alcoholic; (3) domestic violence occurred in the home of Barnes; and (4) X.Z. had unexplained burns on his foot. Barnes entered into a safety plan with DSS on 7 July 2006, but she failed to comply with its terms. The juveniles were placed in DSS custody on 27 July 2006 and have been in DSS custody since that date. S.N. and X.Z. were adjudicated neglected and dependent by consent on 7 September 2006.
On 15 May 2007, respondent entered into a case plan with DSS for reunification. The case plan required her to: (1) establish a verifiable source of income; (2) complete a medication and parenting assessment and follow all recommendations; (3) complete a drug and alcohol assessment and provide proof of completion; (4) remain drug and alcohol free and submit to random drug screens; and (5) establish stable and suitable housing for the return of the children and not be evicted due to nonpayment of rent or mortgage. Respondent entered into a second case plan on 17 August 2007, which reiterated the previous objectives and contained an additional condition that she obtain counseling.
On 4 September 2007, DSS filed a petition to terminate respondent's parental rights to S.N. and X.Z. The petition also sought to terminate the parental rights of the father of X.Z. The father of S.N. was deceased. The petition alleged the following grounds for termination: (1) neglect, (2) willful abandonment, (3) willfully leaving the children in foster care for over twelve months without showing reasonable progress in correcting the conditions which led to removal, and (4) willful failure to pay a reasonable portion of the cost of care for the juveniles.
The trial court conducted hearings in the matter on 5 November 2007, 3 December 2007, 14 January 2008, 17 January, 24 January, and 11 February 2008. Melissa Fox, a Licensed Clinical Social Worker, and Christopher Hines, the Child Protective Services ("CPS") case worker assigned to the children's case, testified for DSS. Mr. Hines testified that DSS was unable to make contact with respondent for a long period of time after the children were taken into DSS custody, and that respondent failed to keep appointments with DSS. Mr. Hines further testified that, after entering into the 15 May and 17 August 2007 case plans, respondent continued to change her residence and was twice incarcerated. Respondent's whereabouts were unknown to DSS for several months in the summer and fall of 2007. Finally, Mr. Hines testified that respondent had not met the objectives in her case plan. Ms. Fox began treating S.N. for anxiety on 26 September 2006. She felt that it was not in S.N.'s best interest to return to live with respondent. Respondent testified about her problems with drug and alcohol abuse, her *58 new job, and her attempts to meet the objectives of her case plan.
On 14 March 2008, the trial court entered an order terminating respondent's parental rights to S.N. and X.Z. on the grounds of (1) neglect under N.C. Gen.Stat. § 7B-1111(a)(1); (2) willfully leaving the children in foster care under N.C. Gen.Stat. § 7B-1111(a)(2); and (3) willfully failing without justification to pay a reasonable portion of the cost of care for the children under N.C. Gen.Stat. § 7B-1111(a)(3). From these orders, respondent appeals. X.Z.'s father's parental rights were terminated, and he did not appeal.

II. Subject Matter Jurisdiction
In her first argument, respondent contends that the trial court lacked subject matter jurisdiction over this case on the grounds that the summons for the petition to terminate parental rights did not list the minor children as a respondents. We disagree.
The standard of appellate review for a question of subject matter jurisdiction is de novo. Raleigh Rescue Mission, Inc. v. Bd. of Adjust. of City of Raleigh, 153 N.C.App. 737, 740, 571 S.E.2d 588, 590 (2002).
N.C. Gen.Stat. § 7B-1106 (2007) governs the issuance of a summons in a termination of parental rights case and requires that the juvenile be named as a respondent. The statute provides, however, that "the summons and other pleadings or papers directed to the juvenile shall be served upon the juvenile's guardian ad litem ..." Id. "The purpose of a summons is to give notice to a person to appear at a certain place and time to answer a complaint against him." Latham v. Cherry, 111 N.C.App. 871, 874, 433 S.E.2d 478, 481 (1993) (quotation omitted). "Service of summons on the guardian ad litem ... constitutes service on the juvenile, as expressly stated in N.C. Gen.Stat. § 7B-1106(a)." In re J.A.P., ___ N.C.App. ___, ___, 659 S.E.2d 14, 17 (2008).
On 4 September 2007, a summons was issued that named the children's guardian ad litem as a respondent. S.N.'s and X.Z.'s names were included in the caption of the summons, but S.N. and X.Z. were not named as respondents. Chet Zukowski, the guardian ad litem appointed on 10 August 2006, accepted service on behalf of the children on or about 14 September 2007.
The summons' deviation from the requirements of N.C. Gen.Stat. § 7B-1106(a) are akin to a nonjurisdictional irregularity and not a defect that deprives the trial court of subject matter jurisdiction. See In re A.F.H-G., ___ N.C.App. ___, ___, 657 S.E.2d 738, 742 (2008) (Stephens, J., concurring). Further, we are bound by the holding of this Court in J.A.P. See In re Civil Penalty, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). Accordingly, we hold that service of the summons upon the children's guardian ad litem constituted service on S.N. and X.Z. for purposes of N.C. Gen.Stat. § 7B-1106(a). The trial court had subject matter jurisdiction over these proceedings.
This argument is without merit.

III. Willfully Leaving Children in Foster Care
In her second argument, respondent contends that the trial court erred in terminating her parental rights on the grounds that the evidence did not support the trial court's conclusion that her parental rights should be terminated. We disagree.

Standard of Review
Termination of parental rights is a two-step process. In re Blackburn, 142 N.C.App. 607, 610, 543 S.E.2d 906, 908 (2001) (citation omitted). In the first phase of the termination hearing, the petitioner must show by clear, cogent and convincing evidence that a statutory ground to terminate exists. In re Young, 346 N.C. 244, 247, 485 S.E.2d 612, 614 (1997) (citation omitted). The trial court must make findings of fact which are supported by this evidentiary standard, and the findings of fact must support the trial court's conclusions of law. In re Shermer, 156 N.C.App. 281, 285, 576 S.E.2d 403, 406 (2003). "The standard of review in termination of parental rights cases is whether the findings of fact are supported by clear, cogent and convincing evidence and whether *59 these findings, in turn, support the conclusions of law." In re Shepard, 162 N.C.App. 215, 221-222, 591 S.E.2d 1, 6 (2004) (quoting In re Clark, 72 N.C.App. 118, 124, 323 S.E.2d 754, 758 (1984)). The trial court's conclusions of law "are fully reviewable de novo by the appellate court." Mann Contr'rs, Inc. v. Flair with Goldsmith Consultants-II, Inc., 135 N.C.App. 772, 775, 522 S.E.2d 118, 121 (1999) (citation omitted). "So long as the findings of fact support a conclusion [that one of the enumerated grounds exists] the order terminating parental rights must be affirmed." In re Humphrey, 156 N.C.App. 533, 540, 577 S.E.2d 421, 426 (2003) (quotation omitted).
Once the trial court has found a ground for termination, the court then considers the best interests of the child in making its decision on whether to terminate parental rights. Blackburn at 610, 543 S.E.2d at 908. We review this decision on an abuse of discretion standard, and will reverse a court's decision only where it is "manifestly unsupported by reason." Clark v. Clark, 301 N.C. 123, 129, 271 S.E.2d 58, 63 (1980).

N.C. Gen.Stat. § 7B-1111(a)(2)
In considering the ground for termination under Section 7B-1111(a)(2), the trial court must employ a two-part analysis and determine: (1) that a child has been willfully left by the parent in foster care or placement outside the home for over 12 months; and (2) as of the time of the hearing, that the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child. In re O.C. & O.B., 171 N.C.App. 457, 464-465, 615 S.E.2d 391, 396 (2005), cert. denied, 360 N.C. 64, 623 S.E.2d 587 (2005). Willfulness under this section means something less than willful abandonment, and "does not require a finding of fault by the parent." In re Oghenekevebe, 123 N.C.App. 434, 439, 473 S.E.2d 393, 398 (1996) (citation omitted).
Respondent first argues that findings of fact numbers 25/26 are not supported by clear, cogent and convincing evidence. These two findings are nearly identical, but are listed in two separate orders.[1] Finding of fact number 25/26 states that respondent "has not presented any documentation that she has in fact completed [the] objectives [of her case plan]."
The trial court entered the following findings, which are binding on this Court due to respondent's failure to challenge their sufficiency. Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal.").
13/14. The circumstances that brought the juvenile into DSS custody were that the mother was incarcerated from December 2004 until February 2006, and while she was incarcerated, the mother allowed her mother, P. Barnes, to take custody of the juvenile while she was in prison.
...
15/16. The maternal grandmother entered into a safety plan with DSS on July 7, 2006, but the grandmother subsequently broke the safety plan, and the juvenile was placed into DSS custody on July 27, 2006.
16/17. The mother was released from prison in February 2006, but she did not assume custody of the juvenile from the maternal grandmother.
17/18. Although the mother testified that the maternal grandmother refused to return custody of the juvenile to her, the Court finds that the mother did not take any reasonable steps to regain custody of the juvenile, such as contacting law *60 enforcement or filing a complaint for custody in the district court.
...
19/20. Although the juvenile was placed into DSS custody on July 27, 2006, the mother did not enter into a case plan with DSS to reunify with the juvenile until May 15, 2007.
...
21/22. The juvenile has been in DSS custody for over 12 months, and the mother has not successfully completed the plan of reunification.
22/23. The mother and her boyfriend have been residing at [a] hotel in [Greensboro,] North Carolina since October 2007, and although she has not been forced to move due to non-payment of rent, the Court finds that the mother does not have a stable housing situation suitable and appropriate for the return of the juvenile to her at this time.
23/24. The mother's parenting assessment recommended that she attend parenting classes; however, she has not successfully completed the parenting classes recommended by DSS as of the date of this hearing.
24/25. The mother has not successfully completed her substance abuse treatment, because although the mother completed all of the class requirements for her substance abuse treatment program, she has not taken the final drug test in order to receive her certificate of completion.
...
27/28. Although the mother maintained stable employment, the mother did not pay any sums of money to DSS for the care and maintenance of the juvenile, and by virtue of her stable employment, she was able to pay a sum greater than zero ...
The trial court's uncontested findings demonstrate that respondent willfully left her children in foster care for over twelve months and had not made reasonable progress in correcting the conditions which led to the removal of the minor children from her care.
Respondent next argues that her parental rights should not have been terminated because she made limited progress. However, the fact that respondent made some efforts to correct the situation does not preclude a finding of willfulness. See, e.g., In re Oghenekevebe at 440, 473 S.E.2d at 398 ("[W]illfulness is not precluded just because respondent has made some efforts to regain custody of the child."); In re Tate, 67 N.C.App. 89, 94, 312 S.E.2d 535, 539 (1984) ("The fact that appellant made some efforts within the two years does not preclude a finding of willfulness or lack of positive response.").
Although respondent made some attempts to correct the conditions which led to the removal of her children, she did not make any attempt to regain custody of her children until after she was in jeopardy of losing them, and termination of her parental rights was proper. See Oghenekevebe at 437, 473 S.E.2d at 397 (finding grounds existed to terminate respondent's parental rights and noting that respondent failed to show any progress until her parental rights were in jeopardy).
We hold that there was sufficient evidence to support the trial court's finding that respondent's extremely limited progress was not reasonable progress. We further hold that the trial court's findings were sufficient to support its conclusion that respondent's lack of progress justified termination of her parental rights under Section 7B-1111(a)(2). Respondent has not challenged the court's determination that termination of her parental rights was in the children's best interests. The trial court's termination of respondent's parental rights is affirmed.
Having concluded that one ground for termination of parental rights exists, we need not address the additional grounds found by the trial court. See In re Brim, 139 N.C.App. 733, 743, 535 S.E.2d 367, 373 (2000).
AFFIRMED.
Judge ELMORE concurs.
Chief Judge MARTIN dissents in a separate opinion.
*61 MARTIN, Chief Judge, dissenting.
The trial court in the present case did not issue summonses naming juveniles S.N. and X.Z. as respondents to the petition filed by the Guilford County Department of Social Services ("DSS"). N.C.G.S. § 7B-1106(a)(5) requires that, "upon the filing of the petition [to terminate parental rights], the court shall cause a summons to be issued ... [which] shall be directed to the following person[ ] or agency, not otherwise a party petitioner, who shall be named as respondent[ ]: ... [t]he juvenile." N.C. Gen.Stat. § 7B-1106(a)(5) (2007) (emphasis added). Because the trial court did not comply with this express requirement of N.C.G.S. § 7B-1106(a)(5), I do not believe the trial court had subject matter jurisdiction to hear the petition filed by the Guilford County DSS, and I would vote to vacate the order terminating respondent-mother's parental rights.
The majority concludes that it is bound to follow In re J.A.P. & I.M.P., ___ N.C.App. ___, 659 S.E.2d 14 (2008), by the holding of In re Civil Penalty, 324 N.C. 373, 379 S.E.2d 30 (1989). See In re Civil Penalty, 324 N.C. at 384, 379 S.E.2d at 37 ("[A] panel of the Court of Appeals is bound by a prior decision of another panel of the same court addressing the same question, but in a different case, unless overturned by an intervening decision from a higher court."). J.A.P. has recently been interpreted by this Court to hold that the requirement of N.C.G.S. § 7B-1106(a)(5) is satisfied and subject matter jurisdiction is conferred when (1) there is service of the summons on either the guardian ad litem or the guardian ad litem's attorney advocate which constitutes service on the affected juvenile, and (2) the juvenile is "nam[ed]" in the caption of the summons. See In re N.C.H., G.D.H., D.G.H., ___ N.C.App. ___, ___, 665 S.E.2d 812, 813 (2008) (citing J.A.P., ___ N.C.App. at ___, 659 S.E.2d at 17). However, prior to J.A.P., this Court decided In re K.A.D., ___ N.C.App. ___, 653 S.E.2d 427 (2007), In re I.D.G., ___ N.C.App. ___, 655 S.E.2d 858 (2008), and In re A.F.H-G., ___ N.C.App. ___, 657 S.E.2d 738 (2008), which strictly interpreted N.C.G.S. § 7B-1106(a)(5) and held that when the affected juvenile "was not listed as a respondent in the summons, as required by [N.C.G.S.] § 7B-1106(a)[(5)], and no summons was issued to [that juvenile], ... an order terminating parental rights must be vacated for lack of subject matter jurisdiction." K.A.D., ___ N.C.App. at ___, 653 S.E.2d at 428-29 (citation omitted); see also I.D.G., ___ N.C.App. at ___, 655 S.E.2d at 859; A.F.H-G., ___ N.C.App. at ___, 657 S.E.2d at 739-40. Based on In re Civil Penalty, I believe this Court is bound by the decisions preceding J.A.P. which strictly interpreted N.C.G.S. § 7B-1106(a)(5).
Therefore, because I believe we are still bound by this Court's earlier decisions in K.A.D. and its progeny, and for the reasons ably and thoroughly discussed in Judge Stroud's dissent in In re N.C.H., G.D.H., D.G.H., ___ N.C.App. at ___-___, 665 S.E.2d at 813-818 (2008) (Stroud, J., dissenting), I respectfully dissent.
NOTES
[1] The trial court entered two separate orders terminating respondent's parental rights: one terminating her parental rights to S.N. and one terminating her parental rights to X.Z. The two orders are nearly identical in substance, with any major differences being attributed to the differences between the two juveniles. A majority of the findings pertinent to this opinion are identical in both orders, but the numbering is slightly different in each. Unless otherwise specified, our citations to the findings of fact include citations to both the S.N. order and to the X.Z. order. The first number in our citations corresponds to the S.N. order and the second number corresponds to the X.Z. order.